on behalf of Terry Byrd. Mr. Krueger, you raised numerous issues. I want to focus on issue No. 1. This case involves a Fourth Amendment violation under Arizona v. Gantt. The police arrested my client for driving without a license and without insurance and searched a box below his car. This situation the police could not have expected to find further evidence that my client lacked insurance or a license. Isn't there something, Mr. Krueger, just to get off the bat here with Gantt. In Gantt, was there some suggestion of a drug transaction? Now Gantt was a, our case is distinct from Gantt because that was just a suspended license case. Drugs were found in there. Yes, okay, so let's start off from there. In Gantt, I believe they had arrested him. They knew he didn't have a valid license. Was he handcuffed? He was handcuffed. Then there was no suggestion that he had been involved in a drug transaction. That's right. But in that case, after he was completely secure, the police went into his vehicle and recovered some, I don't know, heroin or cocaine in a jacket in the car, right? That's right. All right. Now, so should we consider that backdrop when in this case there was testimony by the officer that he, based on his experience and knowledge, and apparently he was only 20 feet away from this person, he observed an exchange of an container that the defendant retrieved from underneath his vehicle. He observed shiny package. He observed green currency. He could not delineate the denominations, but he was about 20 feet away. So is there any difference in terms of what we have here when he said he believed that a drug transaction had occurred? Oh, and he also described a female who was, in his opinion, trying to get down, and after that, the car stopped, and he had an opinion that he had witnessed the sale of narcotics. All of those facts are relevant to showing whether there was probable cause to arrest for a drug offense. Okay. In this case, the trial court heard all of the evidence, and it found there's no way they could have searched the car based on what they had seen. Did they search the car? An interesting question. Did they search the car, or did they search, did they conduct a search when they pulled out something from the outside of the vehicle? Absolutely, Your Honor. Based on what? What case is your best case to say that when the police, you know, take something from around a car, or on sitting on top of a vehicle, that there's an expectation of privacy within that situation? Well, in my report, if I said an appellate car case, I don't know the name offhand, which is that if you cover something up, you demonstrate your expectation of privacy in it. If he was, for instance, just walking along the street holding a bag, we wouldn't say that they could grab the bag and look inside. But the bag, but the holding the bag on the street is not the same as a car, is it? It's exactly the same, Your Honor. It is? All right. I think that under... Well, if it's exactly the same, why didn't he simply put it inside his car? I don't... Why did, if he had an appellate car, if he had gone away from that black box that he had, he could have put it inside his car. But he didn't put it inside his car, did he? And so the question is, do we find some meaning in the fact that he kept it outside of his car? I think he nonetheless showed his expectation of privacy by covering it up so that you couldn't see what it was. Generally, when you have an expectation of privacy, you want to put it in a place where no one else can access it unless they, in fact, enter that area. But a person could be outside in the open air and access that box. If someone, if I was driving a car and someone went under the chasis of the car and grabbed a box, I would personally certainly feel violated by that. I don't think that we want to rule... What case do you cite for that? Because we don't have an intrusion into the closed or locked vehicle. I mean, it is a closed container, but it's magnetized to the vehicle and anyone could just take it. Anyone. What if a ball rolls under your car and the person has to retrieve it from under the car and he goes underneath your car and takes the ball and happens to see a box that he says, hey, I don't know how this box got on there. If it was the owner of the cars, he would have put it inside. I'm going to grab it. If a cop, if a police officer grabbed it, that would be a seizure. But what case do you cite that tells us, that definitively tells us that taking something from outside a vehicle is somehow a search? I don't see, as I said, the case, the Pell Court case I cited about covering things up to demonstrate privacy. I don't see why having the fact that it's attached to a car makes it any different than if it was in my backpack, for instance. There's no distinction. The same considerations from the perspective, from the constitutional perspective of, you know, evidence, destroying evidence for officer safety is at play, regardless of whether it's inside the car or under the car. Is it any way like the situation where someone abandons something by, you know, tossing it? If you're leaving it out on your car and it can just be picked up? I mean, no, it's not like, and it's not like abandoning, in any case, people do this all the time, is that the testimony was, this is a box, much like the box that people put the keys under their, that, you know, if they're locked out, they can go and get. Yeah, aren't they, aren't they in a sense, not really seeking privacy when you do that? I mean, he's, he's got it on it on the outside of his vehicle. I, I'm just trying to, you know, try to understand how this can be compared to the officer going inside, getting into a compartment when we don't have that situation. We have a situation outside the vehicle where they just took it off. I don't, I don't have a case, but I think at a very gut level that if someone was messing around with a box, someone's opening a key box like this, most people would think that their, their privacy was being, was being interfered with. I don't think we want to set precedent that the police officers. All right. Let me, let me ask you, you, you indicated that your case that you're relying on is Arizona versus Gant. And of course it came down before, after, before the circuit court issued its, after the circuit court issued its ruling. And, and the state, in fact, argues in its brief that we should remand. Why shouldn't we simply send it back to the trial court? He heard all the evidence. He, he found a probable cause as the state argues. Why shouldn't we send, simply send it back and let the trial judge decide this case in light of Gant? Because, you know, he didn't make explicit findings of fact. And, and why shouldn't we give him the first chance at that? Well, the circuit already had an opportunity to raise the issue from Palmland and it failed to do so. It shouldn't be given another bite of the apple, in our opinion. Why can't we, the judge doesn't have to adopt impoundment explanation for the search. And he may not, he may say it's, it, there is no impoundment here. Certainly if the car wasn't impounded, was it? Right. We don't know, Your Honor. I don't know. So maybe it doesn't apply at all. There's nothing, there's nothing in the records to indicate that it was, there was a passenger in the car. That, that, as I understand the impoundment procedure, they'll impound if, if no one else can legally parked. In this case, they pulled my client over, presumably they pulled him over into a place where he could actually stop. There's no indication that the impoundment, I think if it had been impounded, it would have probably been brought out. I think you're right, Your Honor. So, so striking impoundment, why should we remand it to let the trial judge decide this case under Gant? Because I think striking impoundment, we have all of the facts that we need in front of us right now, which is, Pardon me. Go ahead, Mr. Kruger. I'm just going, you know, to, to reiterate that the officer's safety and the destruction of evidence rationales were not applied in this case, and therefore the search was unreasonable. But what can we take from Gant that tells us that we should apply Gant in this situation when we have a totally different factual setting? I want, I want you to tell me, what should we get from, what is the language? What is it about Gant that tells us that when you have a scenario such as this, where the officer testifies he believes a drug transaction occurred, and it's based on pretty specific details, how do we, how do we transfer the Gant case where he was, he was cited for traffic violations? There was no suggestion of any drug transaction at all. I would, I would point to the part of the Gant decision where they discuss whether there's independent probable cause. If there's independent probable cause to investigate a drug offense, then they can, they can search the car. They can do that. In this case, there's not anything close to probable cause. The tip was extremely vague. We don't know anything about the caller. We don't know when the call was made. No track record, no basis of knowledge. But they did go to this location. They said they had a, an anonymous tip about drug sales in the area on the 7200 or 7300 block, Spaulding was it? Right. And that there was some suggestion of the use of a Chevy Cavalier? That a Chevy Cavalier was mentioned. We don't know if it was the buyer. We don't know if it was the seller. We don't even know if it had just happened. It might've happened two weeks ago. But when they do get there, they observe this, what the officer testified pretty explicitly about the transaction, the package or the silver packet, the money, he retrieved something from under the car. He had, he gave an opinion and the state argues that there was actually probable cause. Even though the trial court said there wasn't, he said they had enough to do a Terry stop. But the state has argued there was probable cause to make an all of those circumstances. That is, they've got this anonymous tip, vague as it is. But then he observes an actual transaction that he testifies to is a transaction. My recollection is that he didn't say shiny package, he said it was a shiny object. In this context. Let me ask you a specific question. And that concerns the state's position. They claim that the anonymous information that Justice McBride just laid out for us supports a Terry stop. Your position is? Uh, it does support a Terry stop. We're not, we're not disputing the initial stop. Hold it, hold it, hold it, hold it. Are you saying that the, just the anonymous phone call, just the anonymous phone call supports a Terry stop and then they want to add on, uh, the officer's observations and come out with probable cause. I'm sorry, I misunderstood your question. The tip plus the, so the tip alone doesn't support a Terry stop. That's your position, right? Yes. It's, I mean, and the tip plus the observations only supports a Terry stop, not probable cause. That's right. Your honor. Um, I should also point out that, um, I mean, there was, there was the only cooperation that we have is that there was a Chevy there that, that is that there was no specific description of the offender. There's no description of, uh, certainly not the name, but not height, weight, race, any of the things that would be. Let me stop you here on one point that, uh, it's kind of alarming to me. A police officer observes a drug transaction. He observes that the drug is in the inner coat of the car. He doesn't have a right to stop the vehicle and look underneath the car where the drugs are being kept. Is that what your position is? Um, specifically, he does have a right to look under it because that would be something that would be in plain view, but he doesn't have a right to grab it and to grab a covered box and look through it when he has seen the drug transaction. He saw an exchange of some kind money. Do you have a single case or did the state provide you with a single case in their brief where a single transaction, a single transaction, uh, establishes that that transaction was in fact a drug transaction? No, the state hasn't. And that's what we have here. And that's correct. We cited several ones indicating that. I would disagree. We don't, now there are certainly cases that say a single transaction does not amount to probable cause, but what we have here is a tip that brought them to the area, although it's rather general and vague, as you say, uh, but it says that there are drug sales in the 6,300, 9,300 block and that it involves a car and then the officers do not go and stop that car. What they do is get out of their car, post themselves about 20 feet away. And then the officer describes a testimony that's really a little bit different than the average transaction, because this officer said he observed a shiny object. He first observed a woman hailing that car. He gave an opinion that she looked like she was buying drugs. I don't know about that, but then he said that she went to the vehicle, that he took something from underneath from this container, that he saw the shiny object being given to her and that she gave him back green bills, but he couldn't say they were, you know, denominations. And he said that based on his experience, that he was of the opinion that a drug sale had taken place. Now that's not the same as some of the other cases where you might have three, but this was a little more detailed, wouldn't you say, in terms of the testimony about the transaction? And before you answer that, isn't the question whether that drug sale, and presuming that it supports that conclusion, whether that drug sale supports a period stop, or does that drug sale, put in quotes, support probable cause? Now we have an officer who's very experienced, but we also have a trial judge who's very experienced. And the trial judge said, not probable cause. That's right, Your Honor. What the, I think Justice McBride is right. This isn't atypical. This doesn't look like the average transaction that we see where someone is out there shouting rocks close, someone comes up, money stashed, that sort of thing. This is very different. Someone's hailing someone else down. It's, there's not stash. It's this somewhat odd key, you know, key box. It's not a typical one. And I would, although given the standard, we can't defer, strictly speaking, to the trial court's findings, the trial court did evaluate the credibility and found that there wasn't probable cause. All right. We'll give you a few minutes to respond. Yeah. Before you do that, I have a question that really just goes to my curiosity. This is a defendant that's given a three year sentence. He's served over two years already. If we reverse this case, he could get more time than he would have had already, sir. I think given double jeopardy concerns, he couldn't. Okay. Thank you. Good morning, your honors, or good afternoon. My name is Katherine Schirra on behalf of the people of the state of Illinois. I'm sorry, your last name? S-C-H-I-E-R-L. Have you argued before this before? It's been a long time since I've been called to duty to serve. And you really follow each case. It depends on the case that you get and then you follow it through. Is that what happens? If I'm lucky enough to take it up. All right. Hopefully I won't have an opportunity in this case. Why don't you give us your best case that the trial judge got it wrong. That in fact, everything that was presented at the suppression hearing amounted to probable cause. Your best case. In terms of authority? Probable cause, yes. In terms of authority. Well, probable cause is a case by case standard and it changes. But we usually look to other cases to sort of guide us. We say this case is similar to this case, unlike that case. And we're looking for a case that's certainly not identical to this case. But a case that's close enough that it can guide us to a determination that the trial judge got it wrong here. That in fact, according to your argument, that probable cause exists based on all the evidence that was presented. The big totality of the circumstances. My best case. I've cited cases in my briefs, I don't have it in front of me in terms of my argument. But Justice McBride has basically made the probable cause argument for me. The only thing. I wouldn't say that. I don't mean, I mean, not made it for me, but has largely. Cases that say that you need more than one transaction to establish probable cause for a drug transaction. No, there's not, especially not if it's like the circumstances in this case. Supported by what brought the police there was a call of drug dealing. Yes. When you have that, in addition to the observations. Yeah, it's not a tip, though, is probably as vague as they come. Is it not? No, I think drug dealing and it says possibly involving a Chevy Cavalier. There's no description of a possible drug dealer, what the person looks like, what kind of flows. So how was any of that confirmed when they, when they got there? Well, they, other than the, it's not necessary that they confirm any kind of those type of specifics. In this particular case, it was a specific tip that at this exact on this block. Drug dealing is happening out of a Chevy Cavalier. The officers go there, they're there, they're within, as Justice McBride pointed out, they're within 20 feet doing surveillance. And lo and behold, they see a Chevy Cavalier drive by. Then, lo and behold, they see a woman flag the Cavalier down and they see a unusual drug transaction. Where a defendant reaches underneath his car, has the drugs attached underneath his car and pulls them. Does that make any difference? It doesn't seem that the parties have addressed this question here. But this involves something outside the vehicle that was attached by a magnet, apparently. Does it matter that the officers went under the car and retrieved it? Does it matter in terms of. Is there some indication of privacy that this was hidden under the car? Well, I studied a class, New York class, and there's some custom cases where looking underneath the car, even inserting devices up into the gas tank and stuff like that by customs officials are not asserted. Aren't there special rules for border cases? These are, these are, no, I would say no from my recollection, because these are when they're taken to secondary stations. But, no, there's no expectation of privacy in, say, a backpack that I leave on the bumper of my car or. You think the police could open that backpack up and. Sure, just like any abandoned thing. Oh, so it would be abandoned. Well, where do you cite this in your brief? Refresh my memory. It's at the end of Leon. What page are you referring to? All right. Defendant even notes it. New York class. Let's see. You might check your index. Yeah. Page 25. All right, thank you. 29, I'm sorry. You can continue. 29. Exterior of car. Thus in the public eye does not constitute a search. And the question really is, because that case, I'm sure, predates Gantt. And the question is whether Gantt has anything to say about what a search is when. No. Individuals. It doesn't, Gantt doesn't change the expectation of privacy. Let me ask you this. In order for there to be a search, you need probable cause. True? Yes. And the judge said probable cause didn't, the evidence didn't amount to probable cause in this case. With all due respect, Your Honors, the judge is just plain wrong. I mean, when you take the combination of all of the factors, all of the circumstances, including the officers' experience, the experienced narcotics officers, any reasonable person, much less. Did you file a motion to reconsider before the trial judge? Defendant did.  Defendant did. Defendant did. But you didn't, as to the probable cause issue. No. Okay. We didn't. Because we went and felt in control. And so there was, in that motion, there was no litigation over the independent validity of the search of the box because Belton controlled it. That was before Gantt. Yes. Should we send this case back to let the trial judge determine how Gantt. Absolutely. I think you should also send it back for the impoundment. Impoundment is very. Was the car impounded? We don't know. Because we want. Do we want to send it back for. We want. So we didn't litigate. But why should we send it back because we don't have an answer to a question that may not make any difference. This is a probable cause case, Your Honors. And the cases that say. You're saying that there was no search conducted at all. Why would they. What would be the reasoning that they would have to have probable cause. Wouldn't the Terry stop me enough to justify. Sure. Where they saw this. If you agree that the search of the box underneath the chassis of the car is not a search because there's no expectation of privacy. That was not your primary argument that you suggested in this brief. Right. No. Now are there two steps regarding that box. First the retrieval of the box. And then the opening of the box. The retrieval of the box you say is not a search. And is it your position that the opening of the box is also not a search. If there's no expectation of privacy in it when it's placed out in public like that, it's abandoned. And there's no. Does the box being closed. No. Suggest that there's an expectation of privacy. It's a drug stash outside. Just like the guy who hides his bag of drug stash in the weeds there. Closed. Rolled up. Or maybe. We've already decided. So you're saying this is like an abandonment case. Even though it's his car. Even though he put it there. There's numerous grounds here to affirm the search and defend its conviction. All right. Well, thank you very much. Any other questions? Thank you, Your Honor. Counsel, very briefly. Two points I wanted to clarify. First, you asked whether there was any question. Whether there were any cases that say that you need more than one transaction to establish probable cause. On page five I say three cases on that. The second point I wanted to make is the tip, the call in, said that there was drug dealing going out of a Chevy. And that's not what happened. It just mentioned a Chevy. We don't really know. Let me ask you this question. Let's say there are two steps that were performed by the officers. First, the grabbing of the magnetic box. That may seem to be reasonable. It may be, hey, I want to know what this is. I saw you put it under there. And then the question of whether he should open it. And what if we remand it and the testimony is that the individual said or the defendant said, that's my dope box. Would that give the officer probable cause to open that box? If that was the case, then yes, it would. But that wasn't the testimony. You're somewhat referring to the second issue. And I think if you're getting into that. No, we're not going to get into that. All right. Well, thank you very much. The case will be taken under advisement of the Courts of Appeal.